

U.S. COURT OF APPEALS
RECEIVED
CLERK
OCT 0 6 2016
ATLANTA, GA

Case number: 16-15890- CC

## IN THE ELEVENTH CIRCUIT COURT OF APPEALS

ANTHONY ELADIO RAMOS )
                                              )
              Appellant,                      )
vs.                                           )
                                              )
JOHN R. TOMASINO, CLERK OF COURT              )
OFFICE OF THE CLERK OF COURT                  )
OF THE FLORIDA SUPREME COURT                  )
KEVIN TYNAN                                   )
RICHARD LISS                                  )
THOMAS D. HALL                                )
JOHN F. HARKNESS, JR.                         )
BARBARA PARIENTE                              )
THE FLORIDA BAR                               )
THE FLORIDA BOARD                             )
OF BAR EXAMINERS                              )
THE SUPREME COURT                             )
OF FLORIDA                                    )
              Appellees.                      )
_____ )

### APPELLANT'S BRIEF ON
### APPEAL FROM THE DISTRICT COURT OF
### THE SOUTHERN DISTRICT OF FLORIDA

RESPECTFULLY SUBMITTED,
Anthony Eladio Ramos, Pro Se
1805 Key Blvd.
Apt. 513
Arlington, VA 22201
202-236-3427

# TABLE OF CONTENTS

Table of Contents.................................................................................i-iii

Table of Authorities.............................................................i-v

I . Jurisdictional Statement........................................................1-2

II . Statement of
Issues Presented for Review.................................................2

III . Statement of the Case
and of the Facts..................................................................2-15

      A . Statement of the Case.................................................2-3

      B . Statement of the Facts..............................................3-11

            1 . The Acts of the Concealment,
               Spoliation and Destruction
               of the Appellant's Disciplinary Records by
               the Appellees..................................................3-7

            2 . Florida's Twin Rules for Records....................................7

            3. The Relevant Market.................................................7-9

            4 . The Barrier to the Appellant's Entry
               into the National Legal Market....................................9-11

IV. Summary of the
Argument..........................................................................12-13

      A . The standard of review, Sherman Act
         rules of Pleading and the Elements
         of the cause of action........................................12-13

i

B . Summary of the Argument ...................................................13

V . Argument..............................................................................13-26

I . Analysis of Points and Authorities
Independently of the Order of
Dismissal.................................................................13

A . The Complaint States a
Cause of Action for Sherman
Act violations for which
the Appellees must Plead
and Prove any Defenses........................................13-19

1 . There is no State Action Immunity
for the Non-Discretionary Concealment
Spoliation, and Destruction of
Government Records...................................14-18

2 . This Court has Rejected Florida's
attempt to Defend on Sherman Act
State Action Immunity, in Cases Where
State Officials and Agencies are
attempting to Remove Professionals
from Practicing..........................................18-19

B . The Order of Dismissal Reverses the
only Three Sherman Act Decisions
of the United States Supreme Court,
with Respect to the Legal Sector..........................19-21

C . There is no such defense as an '11th
Amendment Immunity' for the Non-
Discretionary Concealment, Spoliation,
and Destruction of Government Records
by the Appellees.....................................................21-23

ii

D . There is no 'Rooker-Feldman' Exception
to the *Midcal* test for State Action
Immunity.................................................................23-26

II . The Order of Dismissal must
be Vacated under this Court's
*De Novo* Review.........................................................27-29

A . The Legal Standard.................................................27

B . *Parker* Immunity - Counts I & II..............................27-28

C . Rooker-Feldman - Counts III & IV............................28

D . Immunity Under the
Eleventh Amendment - All Counts...........................28-29

E . Miscellaneous Items in the Order...........................29-30

VI . Conclusion.............................................................30

Certificate of Service

iii

# TABLE OF AUTHORITIES

Cases:

*Aquatherm Industries, Inc. v.*
*Florida Power & Light Company,*
84 F3d 1388 (11th Cir. 1996)................................................................................................1

*Askew v. DCH Reg'l Health Care Auth.,*
995 F.2d 1033, 1037 (11th Cir. 1993)...........................................................................27, 28


*Bates v. State Bar of Arizona,*
433 U.S. 350 (1977)..........................................4, 8, 12, 13, 19, 20, 21, 22, 24, 25, 27, 28, 29

*Bolt v. Halifax Hospital Medical Center,*
851 F.2d 1273 (11th Cir. 1988)....................................................................17, 18, 19, 21,

*California Retail Liquor Dealers Association,*
*v. Midcal Aluminum,* 445 U.S. 97 (1980)...........................................12, 13, 15, 18, 23, 24, 26, 28

*Carr v. City of Florence,* 916 F.2d 1521, 1524 (11th Cir. 1990)....................................................29

*Caroll v. Gross,* 984 F.2d 392 (11th Cir. 1993)................................................................................28

*Clinton v. Jones,* 520 U.S. 681 (1997).............................................................................................3

*Dale v. Moore,* 121 F.3d 624, 626 (11th Cir. 1997)........................................................................28

*District of Columbia Court of*
*Appeals v. Feldman,*
460 U.S. 462 103 S.Ct. 1303 (1983).........................................................5, 23, 24, 25, 26, 28


*Douglas v. United States,* 814 F.3d 1268 (11th Cir. 2016)............................................................12

*DePuy, Inc. v. Eckes,* 427 So. 2d 306 (Fla. 3d DCA 1983)......................................................17, 26

*Edelman v. Jordan,* 415 U.S. 651 (1974).........................................................................................21

i

*Ellen S. v. Florida Board of Bar Examiners,*
859 F.Supp. 1489 (S.D. Fla. 1994……………………………………...………20, 28

*Ex Parte Young,* 209 U.S. 123 (1908)...............................................................29

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,*
544 U.S. 280
(2005)...........................................................................................24, 25, 26, 28

*Federal Trade Commission v. Actavis, Inc.,*
133 S. Ct. 2223 (2013)...............................................................................12,
27

*Genins v. State Bar of Ga.,*
2006 WL 2699076, at *5 (S.D. Ga. 2006)...........................................27, 28

*GJR Invs., Inc. v. County of Escambia, Fla.,*
132 F.3d 1359, 1369 (11th Cir. 1998).......................................................27

*Goldfarb v. Virginia State Bar,*
421 U.S. 773 (1975)...............................8, 9, 13, 19, 20, 21, 22, 24, 25, 27, 28, 29

*Grizzle v. Kemp, 634 F.3d 1314,(11th Cir. 2011)*.....................................29

*Harty v. North Lauderdale Supermarket, Inc.,*
No. 0:2014cv62945 - Document 24 (S.D. Fla. 2015), ……………………...27

*Hoover v. Ronwin,* 466 U.S.558 (1984).............................19, 20, 21, 22, 24, 27, 28, 29

*Johnson v. Supreme Court of Ill.,*
165 F.3d 1140 (7th Cir. 1999)....................................................................28

*Kimel v. Florida Board of Regents,* 120 S.Ct. 631 (2000)...........................22

*Kokkonen v. Guardian Life Ins.,* 511 U.S. 375 (1994)................................27

*Mack v. Florida State Board of Dentistry,*
*430 F.2d 862* (then-5th now 11th Cir. 1970);
*cert. den.* 401 U. S. 960, 961 (1971)...................................................19, 23

ii

*Manko v. Steinhardt*, 2012 WL 213715,
at *3 (E.D.N.Y. 2012)............................................................................................28

*McFarland v. Folsom*, 854 F. Supp. 862
(M.D. Ala. 1994)....................................................................................................28

*Marbury v. Madison*, 5 U.S. 137 (1803)..................................................................9

*Martino v. Wal-Mart Stores, Inc.*, 908 So.2d 342 (Fla. 2005)...........................26

*May v. Capote and South Florida Water
Management District*, 149 Fed.Appx.
913 (11th Cir. 2005)....................................................................................24, 26, 28

*Nixon v. Administrator of General Services*,
433 U.S. 425 (1977)...............................................................................................17

*Otworth v. The Florida Bar*, 71 F. Supp. 2d 1209,
1220 (M.D. Fla. 1999)...........................................................................................27

*Parker v. Brown, 317 U.S. 341 (1943)*.......................................19, 20, 23, 24, 27

*Patrick v. Burget*, 486 U.S. 94, 108 S. Ct. 1658,
100 L. Ed. 2d 83, 1988 U.S. LEXIS 2071 (1988)...............................................19

*Rockwell International Corp. v. Menzies*,
561 So. 2d 677 (Fla. 3d DCA 1990)...............................................................17, 26

*Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923)....................23, 24, 25, 26, 28,

*Searcy v. Singletary*, 894 F. Supp. 1565 (M.D. Fla. 1995).................................29

*Schopler v. Bliss*, 903 F.2d 1373, 1379 (11th Cir. 1990)....................................29

*Scott v. Frankel*, 562 F. App'x 950, 953 (11th Cir. 2014)..................................28

iii

*Tramel, as Sheriff of Columbia County, Florida v.*
*Bass*, 672 So. 2d 78, 84 (Fla. 1st DCA 1996)..................................................16, 26, 28

*United States v. H. R. Haldeman et. al.,*
559 F2d 31 (U.S.App.D.C. 1976);
*cert. den.,* 97 S.Ct. 2641 (1977)...........................................................................17

*United States v. Nixon*, 418 U.S. 683 (1974).........................................................17


Statutes and other Authorities:

15 U.S.C. §1...............................................................................................1

15 U.S.C. §4...............................................................................................1

28 U.S. C. § 1291........................................................................................1

28 U.S. C.  § 1295........................................................................................9

42 U.S. C. § 1983 ..................................................................................27, 28

Florida Statute § 542.17 (3) ...........................................................................23

Florida Statute § 542.31...............................................................................29

Florida Statute §542.32...............................................................................29

Florida Statute  § 918.13..............................................................................16

F.R. App. P. 4(a)(1)(A)..................................................................................1

F.R. App. P. 12..........................................................................................15

The Florida Rules of Judicial Administration......................................................7, 14, 15

iv

Rules of Admission of the United States
Supreme Court..................................................................................9

Rules of Admission of the 11th Circuit
Court of Appeals ...............................................................................9

Rules of Admission of the Southern
District of New York .........................................................................9

Rules of Admission of the United States Court
of Appeals for the Federal Circuit .....................................................9

Publications:

James T. Sparkman and John W. Reis, *Spoliated Evidence:
Better than the Real Thing?*, 71 Fl. Bar Jnl. No. 7
( July/August 1977)...........................................................................16

William F. Hamilton, Lindsay M. Saxe,
and Stephanie Moncada, *Streamlining
and Modernizing Florida's Pre-litigation
Preservation Standard: Modern Technology
 Demands a Modern Solution,*
88 Fl. Bar Jnl. No. 5 (May, 2014)....................................................16

**U.S. COURT OF APPEALS FOR THE ELEVENTH CIRCUIT**

**CERTIFICATE OF INTERESTED PERSONS**
**AND CORPORATE DISCLOSURE STATEMENT (CIP)**

Ramos _____ _vs._ Tomasino, et.al. _____ Appeal No. 16-15890CC

11th Cir. R. 26.1-1(a) (enclosed) requires the appellant or petitioner to file a Certificate of Interested Persons and Corporate Disclosure Statement (CIP) with this court within 14 days after the date the case or appeal is docketed in this court, and to include a CIP within every motion, petition, brief, answer, response, and reply filed. **You may use this form to fulfill this requirement.** In alphabetical order, with one name per line, please list all trial judges, attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of this case or appeal, including subsidiaries, conglomerates, affiliates, parent corporations, any publicly held corporation that owns 10% or more of the party's stock, and other identifiable legal entities related to a party.

_(please type or print legibly):_

None, other than the appellees.

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

Rev.: 12/15

RESPECTFULLY SUBMITTED,

_____

Anthony E. Ramos, pro se
1805 Key Blvd.
Apt. 513
Arlington, VA 22201
202-236-3427
00aramos@gmail.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 24th day of September, 2016 the original and three copies of this Notice were mailed to: Clerk of Court, U.S. Court of Appeals for the 11th Circuit, 56 Forsyth St., N.W., Atlanta, Georgia 30303, and that a copy was emailed to:

Defendants, Barbara J. Pariente, Thomas D. Hall, John R. Tomasino, Office of the Clerk of The Florida Supreme Court, and The Florida Supreme Court, by emailing:
Shane Weaver, Esquire, Office of the Attorney General, 1515 N. Flagler Drive, Suite 900, West Palm Beach, FL 33401, at Shane.Weaver@myfloridalegal.com, and;

Defendants, Kevin Tynan, Richard Liss, John F. Harkness, Jr., and The Florida Bar, by emailing: Michael H. Moody, Esquire, Greenberg Traurig, P.A., 101 East College Ave., Tallahassee, FL 32301 at, moodym@gtlaw.com; and;

Defendant, The Florida Board of Bar Examiners, by emailing James Dean, Esquire, Messer Caparello, P.A., 2618 Centennial Place, Tallahassee, Florida 32308 at jdean@flalaw.com .

_____

Anthony E. Ramos, pro se

# I.

## JURISDICTIONAL STATEMENT

A . The District Court's subject matter jurisdiction:

    The appellant, plaintiff below, filed an action against the appellees, defendants below, pursuant to 15 U.S.C. §1, the Sherman Act. Pursuant to 15 U.S.C. §4, the District Court has jurisdiction to enjoin alleged violations of 15 U.S.C. §1. *Aquatherm Industries, Inc. v. Florida Power & Light Company,* 84 F3d 1388 (11th Cir. 1996).

    The complaint alleges that the appellees, all State of Florida institutions, or individuals currently and formerly employed by such institutions, by their acts in destroying the appellant's disciplinary records, raised the barrier to the appellant's entry into the national market for the delivery of legal services, in violation of §1. (AR 0014-AR 0017)

B . The basis for the Court of Appeals' jurisdiction:

    This Court has jurisdiction of this matter, pursuant to 28 U.S. Code § 1291, because the District Court entered an Order of Dismissal, with prejudice. (AR 0132-AR 0142)1

    C . The filing dates establishing the timeliness of the appeal:

    The Federal rules allow for the filing of the instant appeal to be noticed within thirty days from the entry of the enabling order. F.R. App. P. 4(a)(1)(A). The Order of Dismissal was entered on August 25, 2016. (AR 0142) The matter was dismissed solely on the basis of Rule 12(b)(1) of the Federal Rules of Civil Procedure. (AR 0132 - AR 0142) The Notice of Entry of the Notice of Appeal was docketed on September, 15, 2016. (AR 0144) Thus, the appeal is timely filed.

    D . An assertion that the appeal is from a final order or judgment that disposes of all

Parties' claims, or information establishing the court of appeals' jurisdiction on some other basis:

The Order of Dismissal reads: "This case is **DISMISSED WITH PREJUDICE.**" (AR 0142)

## II.

### STATEMENT OF ISSUE
### PRESENTED FOR REVIEW:

### WHETHER THE APPELLEES, HAVING
### ILLEGALLY DESTROYED THE
### APPELLANT'S ATTORNEY DISCIPLINARY
### RECORDS, MAY AVOID SHERMAN ACT
### LIABILITY UNDER THE PRETENSE OF
### STATE ACTION IMMUNITY

## III.

### STATEMENT OF THE CASE AND OF
### THE FACTS

### A. STATEMENT OF THE CASE

This is an appeal by an attorney from the dismissal, with prejudice, (AR 0132 - AR 0142) of a Sherman Act, antitrust complaint, (AR 0013 - AR 0067) which accrued from the acts of the appellees, relative to the concealment, spoliation, and destruction, of appellant's Florida disciplinary files needed for admission into other State and Federal bar associations.

The complaint alleges that the appellant seeks to activate his law license in other States, and in the Federal Bar. (AR 0017) The complaint alleges that, as result of the destruction of the records from his Florida proceedings, by the appellees, he cannot comply with rules of admission which govern the production of such records by the admissions committees in the other States,

the District of Columbia, and for entry into the Federal Bar. (AR 0017, AR 0022)

The complaint alleges that, therefore, the appellant is prohibited from entering into the recognized national legal market, and thus, prevented from competing in that market economy. (AR 0023-AR 0025) (¶ 45-46, AR 0023, ¶ 52-53 AR 0025, ¶ 68 AR 0028)

The district court entered an additional order, granting the motion of all of the appellees to stay discovery. The Order was entered on the erroneous reliance of the order of the United States Supreme Court in *Clinton v. Jones,* 520 U.S. 681 (1997), rejecting immunity. (AR 0069 - AR 0072)

Neither the appellees, nor the District Court challenged the allegations of the complaint as to the national relevant market for the delivery of legal services.

Neither the appellees, nor the District Court provided any legal authority for the attempted state action immunity to preempt the rules of admission for the national Federal Court system, or of other States.

The false assertion by the appellees, therefore, that the appellant is a 'disbarred lawyer in Florida,' attempts to illegally preempt any other admissions process, State or Federal, where that false assertion cannot be supported by records which are now destroyed.

The appellant seeks relief from the Federal courts to enjoin the appellees from continuing to so falsely assert.

### B. STATEMENT OF THE FACTS

### 1 . THE ACTS OF CONCEALMENT, SPOLIATION AND DESTRUCTION OF THE APPELLANT'S DISCIPLINARY RECORDS BY THE APPELLEES

3

The complaint alleges that, when, after, successor counsel of the appellee, The Florida Bar, honestly and truthfully entered into the official record, an affirmation that the secret hearing had taken place, all of the appellant's disciplinary records were destroyed by the appellees. (AR 0035-AR 0036) The full records, save for the subsequent proceedings concerning that entry, were known to exist, as confirmed below by defense counsel for the appellee, Florida Bar, and the individual appellee/employees associated with that group:

> In fact, Ramos already has presented the circumstances of his disbarment to the District of Columbia which appears to have rejected his application for admission, not for failure to provide a certified copy of the order of disbarment, but because the circumstances of his disbarments which Ramos revealed to the District of Columbia Bar were disqualifying. (AR 0076)

The complaint alleges that, because of the records destruction, the appellant had to already withdraw his application to the New York Bar. The appellant's letter of withdrawal is made an exhibit to the complaint. (AR 0062-0063) The complaint alleges how, right at that critical juncture, where the appellees could no longer hide the exculpatory evidence, the files were, therefore, destroyed in order to hide the corruption. (AR 0035)

The complaint alleges that the appellees, Tynan and Liss, were the original prosecutors on the matter. (AR 0032 - AR 0033) They coerced the appellant's attorney to withdraw from the matter. (AR 0032 - AR 0033) Tynan and Liss were successful in this effort by way of a secret fax sent to the presiding referee. (AR 0032 - AR 0033) The fax was on the fax cover sheet of the appellee, The Florida Bar.

As a result, without representation at the final hearing on the penalty phase, a five-year suspension turned into a 20-year disbarment. (AR 0032 - AR 0033) In fact, the matter should

4

have been abated, so that the appellant could have been placed on notice that he was not represented at the hearing, and either appear *pro se*, or retained new counsel.

The appellee, Harkness, was the supervisor of Liss and Tynan. Harkness approved of the secret hearing, the secret fax, and Liss and Tynan provided to Harkness a copy of the fax sheet.

The fax sheet was never made a part of the official record. Harkness provided it to the appellee, Hall.

The complaint alleges that, it was immediately after the denial of the appellant's application to the D.C. Bar, when appellant's counsel finally advised the appellant about the secret hearing. (AR 0035 - AR 0036) The complaint alleges, further, that Liss and Tynan, after the secret hearing, orchestrated the plan, which resulted in the appellant's counsel leaving the hearing before it even started. (AR 0032 - AR 0033)

The appellant, then, contacted the appellee, Hall, to ask why any motion to withdraw, and any notice of any hearing on the motion to withdraw, did not appear on the official court index. The complaint alleges that appellee, Hall, then transmitted the secret fax sheet to the appellant. (AR 0033 - AR 0034)

The complaint alleges that, with the secret fax in hand, the appellant immediately moved the appellee, the state supreme court, to reopen the matter, based upon this newly discovered evidence. (AR 0032) The appellant made the secret fax a part of the record in those proceedings. (AR 0030, AR 0032, AR 0035)

The complaint alleges, further, that in reply to the appellant's motion to reopen, therefore, successor counsel for appellee, The Florida Bar, Adria Quintela, admitted in her reply, that the

5

hearing on the motion to withdraw did take place. (AR 0036) This was the first record activity by the appellees, therefore, of both the secret fax, and of the admission by then that, in fact, the secret hearing had taken place. (AR 0036) No record of the motion exists on the official court index, or of the fax.

The complaint alleges that, during those proceedings, in addition, multiple motions for recusal were filed against appellee, Pariente. Prior to becoming a judge, and with her husband, appellee had had significant legal and political disputes with the appellant. (AR 0037 - AR 0040) On each occasion, Pariente refused to recuse herself, and likely wrote the most recent opinion on the proceedings. The opinion is silent as to the secret fax and the secret hearing, and the effects of the appellant being left without counsel at the hearing.

The complaint alleges that some time later, when the appellant made a routine request for certified copies of his disbarment orders, to be followed by production of the records, appellee, Tomasino, Hall's successor as clerk of the appellee, state supreme court, advised that the records had been destroyed. (AR 0025, AR 0065) These facts place the destruction of the records not only after the D.C. Bar admissions proceedings had ended, but, critically, after the appellant had made the secret fax a part of the official record, and after attorney, Quintela's, admission that the secret hearing had taken place. (AR 0036)

The complaint alleges that the exculpatory evidence, as a part of the official record, would have been key in the admissions process that the appellant was making in New York, because it showed that the disbarment was the result of the corruption, and not as to the merits of the original matter. (AR 0023, AR 0025, AR 0029) The opportunity to present that exculpatory

6

evidence, as a part of the character component of all admissions processes, this Court included, has now been permanently foreclosed.

## 2 . FLORIDA'S TWIN RULES FOR RECORDS

The complaint alleges that, in Florida, there are two sets of general rules for judicial records which affect the ability of a lawyer to enter into the relevant market, the national market for the delivery of legal services. (AR 0043) The complaint alleges that The *Florida Rules of Judicial Administration* (hereinafter, the Florida Rules) are non-discretionary, clearly articulated, and, therefore, for Sherman Act purposes, must be actively supervised by the state, here the appellee, the state supreme court. (AR 0043)

The complaint alleges, further that a second, parallel, set (hereinafter, the parallel set) of general rules are unwritten, discretionary, not clearly articulated, and not under the active supervision of the state supreme court. (AR 0043) This parallel set of general rules was disclosed by the appellee, Tomasino, as follows: "As to your request in paragraph number two, the documents in our miscellaneous file are simply organized into subfolders by year, with the file name of each filing named as LastName_FirstName_Date. There is no index to this location of subfolders in our file share." (AR 0090 - AR 0091)

## 3 . THE RELEVANT MARKET

The complaint alleges that, for Sherman Act purposes for the legal sector, a national and fully integrated legal market exists for the market price relative to the delivery of legal services. (AR 0020) Pursuant to this national market, the national, Federal courts have their own rules of admission, which are not preempted by the state court rules as applied to the legal sector. The

7

Order of Dismissal does not mention the relevant market. (AR 0132 - AR 0142)

The complaint alleges that *Goldfarb v. Virginia State Bar,* 421 U.S. 773 (1975), grappled with the 'interstate commerce' effects of a local lawyer price-fixing scheme, (AR 0014 - AR 0016, AR 0041- AR 0042) , and that *Bates v. State Bar of Arizona,* 433 U.S. 350 (1977), made sure to note that even the state supreme courts are not immune from Sherman Act liability. (AR 0094 - AR 0096) The complaint alleges that the national market is, likely, the correct analysis, because, there is an intrastate and an interstate component to the regulation of the legal sector. (AR 0015)

That regulation begins, but cannot end with the attempt by state actors, as here, with a blanket preemption grant of state action immunity to the state supreme courts, and their agencies of admissions and discipline. (AR 0016) The complaint alleges that the national market allows a free flow of attorney services, especially in this modern era, that is dependent upon the existence of the national rules of admission. (AR 0016) Such a market allows for the risk takers, the entrepreneurs, like the appellant, to accelerate their businesses on a national scale. Thus, the complaint alleges that the interstate commerce component of the dual system of the legal sector provides to the attorney, the opportunity to gain admission to practice in the national Federal court system, upon those national courts making their own independent determination, pursuant to their own rules of admission, as to whether to admit an attorney. No state court can claim Sherman Act state action immunity in order to preempt those national rules. (AR 0016)

For example, admission into the Federal District Courts for the Southern District of New York, are governed by these rules: http://www.nysd.uscourts.gov/atty_admission.

8

The rules governing admission to this 11th Circuit Court of Appeals, are here:

*http://www.ca11.uscourts.gov/attorney-info/attorney-admissions*

The rules governing admission to the United States Supreme Court, are here:

https://www.supremecourt.gov/bar/baradmissions.aspx.

The rules governing admission to the United States Court of Appeals for the Federal

Circuit are here: http://www.cafc.uscourts.gov/contact/attorney-admission-information

The complaint alleges that, if an attorney has a case that is beyond the State in which he

or she is admitted to practice in the Federal District courts, the attorney may, by associating with

local counsel, appear *pro hac vice.* (AR 0016) The complaint alleges that here in Washington,

D.C., where, as with the appellant, significant opportunities exist from Federal government

procurement opportunities, such entrepreneurs must, pursuant to 28 U.S. Code § 1295, enter into

the exclusive and national jurisdiction of the United States Court of Appeals for the Federal

Circuit, the *Marbury v. Madison* court.  (AR 0022) In the case of such opportunities, in the case

of the appellant, these come, typically, from one Cabinet level Department, and one Federal

independent commission. Plus, and however, another independent Federal Commission regulates

and qualifies both the appellant and his companies. For all of these activities, the

entrepreneur/attorney can have a significant advantage over competitors in this vast and lucrative

government procurement market. This presentation of the relevant national market went

unchallenged by the appellees and by the District Court judge.

## 4. THE BARRIER TO THE APPELLANT'S ENTRY INTO THE NATIONAL LEGAL MARKET

The complaint, alleges, consistent with the 'fear of prosecution' standard of *Goldfarb*

that, absent Federal relief from this matter, there is no present manner, given the continued false assertion by the appellees that appellant is a 'disbarred lawyer,' for him to continue making his application to the State and Federal bar. (AR 0025) Every application to any Federal or State court, asks the exact same question as posed above: 'have you ever been disbarred?'

The complaint alleges that the appellant is, in fact, a high risk-taking third generation self-made entrepreneur. (AR 0019) The complaint alleges that, in 2009, with his business partners, he founded a group for the specific purposes of taking advantage of significant new Federal government procurement opportunities. (AR 0020 - AR 0021) In 2013, new Federal laws allowed for other significant and dramatic opportunities of equity funding. (AR 0021) In 2015, other phases of the equity opportunity opened. These provided far more significant opportunities for the companies. (AR 0021)

The complaint alleges that in order to further accelerate the ability of the companies to compete in the marketplace, the appellant took two new steps. He applied for, and was accepted to, and began his coursework and thesis research for, the LL.M. program at one of the nation's top law schools here in Washington, D.C. (AR 0021) The admissions committee admitted him. (AR 0021) Secondly, in order to accelerate the ability of the companies to compete in the national marketplace , by making certain legal challenges, the appellant made application to take the New York bar exam, and he did take all three parts in the summer of 2014. (AR 0021 - AR 0022)

The complaint alleges that, in order to comply with the many records production

requirements of the New York bar admissions procedures, the appellant requested of the appellee, Tomasino, in his capacity as the clerk of the appellee, Clerk of Court, a certified copy of any and all disbarment orders. (AR 0017, AR 0028 - AR 0030) This request was to have been followed, upon production of same, by the appellant's request for a full copy set of all of his disciplinary records, all of which had been the subject of the many opinions written by the appellee, the state supreme court. As the exhibits to the complaint show, appellee, Tomasino, responded that all of the appellant's records had been purposely destroyed. (AR 0065) Further, appellee, Tomasino, therefore, was unable to provide a certified copy of any of the disbarment orders. The appellee, the state supreme court, has never, therefore, despite its continued assertion that the appellant is a 'disbarred lawyer' provided a single certified statement in support of such.

The appellant contacted the appellee, The Florida Bar, also failed to achieve any such certified statement from the state supreme court. (AR 0035 - AR 0037)  The complaint alleges that such records destruction, in such a high profile case, could only have been authorized by government officials with significant authority to order same. In this matter, the complaint alleges that those persons were the appellees, Harkness and Pariente. (AR 0035 - AR 0040)

The complaint alleges that, therefore, absent some Federal relief, he cannot and will not be admitted into the Federal or State courts. (AR 0044 - AR 0058)

The appellant, therefore, was left with no recourse but to withdraw his application to the New York bar. (AR 0017) The appellant wrote to the New York clerk, advising of the withdrawal (AR 0062)

11

## IV. SUMMARY OF THE ARGUMENT

## A. THE STANDARD OF REVIEW, SHERMAN ACT RULES OF PLEADING AND THE ELEMENTS OF THE CAUSE OF ACTION

### 1. THE STANDARD OF REVIEW

In *Douglas v. United States,* 814 F.3d 1268 (11th Cir. 2016), a Florida prisons case, this Court recently ruled that, where, the plaintiff makes a plausible facial showing of a cause of action as to non discretionary governmental actions, a *de novo* review of the legal issues will take place.

### 2. THE STANDARD OF PLEADING IN SHERMAN ACT CASES: 'QUICK LOOK' v. 'RULE OF REASON'

As this Court had a front-row seat to the most recent Sherman Act pleadings case by the United States Supreme Court, the Court is familiar with issues of pleading. In *Federal Trade Commission v. Actavis, Inc.*, 133 S. Ct. 2223 (2013), this Court's 'quick look,' urged upon it by the FTC, of a complaint in a generic drug case, was reversed in favor of a 'rule of reason' analysis. To the extent that this appeal involves not the complex effects of a reverse payments plan with non-generic drug manufactures, but is more in the mundane nature of facts as analyzed by this Court in *Douglas, supra,* above, the appellant here believes that 'quick look' is sufficient. Of course, as in *Actavis*, this Court may feel constrained to analyze the matter under the rule of reason.

### 3. *MIDCAL*: THE CURRENT TEST FOR STATE ACTION IMMUNITY

The current-law case for the determination of state action immunity, is *California Retail*

12

*Liquor Dealers Association, v. Midcal Aluminum,* 445 U.S. 97 (1980) (hereinafter, *Midcal*). Midcal discussed both *Goldfarb* and *Bates,* with approval. The Court enunciated the current test for state action immunity, thusly: "First, the challenged restraint must be 'one clearly articulated and affirmatively expressed as state policy'; second, the policy must be 'actively supervised' by the State itself." *Midcal, supra,* at. 105

## B . SUMMARY OF THE ARGUMENT

The complaint alleges that the appellant has been caused to withdraw his application for admission into the national legal marketplace, because of the destruction, by the appellees, of his previous disciplinary records from proceedings in Florida.

The appellees continue to assert that, despite the non-existence of any records of proof, now destroyed, the appellant is a 'disbarred lawyer.'

There is no Sherman Act state action immunity for the illegal, non-discretionary, concealment, spoliation and destruction of those records.

Absent Federal relief in this matter, enjoining the appellees from continuing to falsely assert that the appellant is a 'disbarred lawyer,' the records now having been destroyed, an impossible barrier to entry into the Federal legal marketplace is upon the appellant.

The State legal regulatory procedures for admission and discipline of attorneys do not preempt the Federal rules of admission into the Federal courts, and therefore, Sherman Act state action immunity is not a bar to this Court's independent review, for Federal purposes, of the actions of the state.

## V . ARGUMENT

## I . ANALYSIS OF AUTHORITIES INDEPENDENTLY
## OF THE ORDER OF DISMISSAL

13

**THE COMPLAINT STATES A CAUSE OF ACTION FOR SHERMAN ACT
VIOLATIONS, FOR WHICH THE APPELLEES MUST PLEAD
AND PROVE ANY DEFENSES**

When considering that this Court's review of this matter is *de novo,* the appellant,

therefore, presents his argument in two parts. In this first part, the appellant analyzes the relevant

authorities in support of his argument, independently of the Order of Dismissal. In the second

part, the appellant makes argument in the context of the Order of Dismissal.

**1. THERE IS NO STATE ACTION IMMUNITY FOR THE NON-DISCRETIONARY
CONCEALMENT, SPOLIATION AND DESTRUCTION OF
GOVERNMENT RECORDS**

The clearly articulated rules of the *Florida Rules of Judicial Administration,* are general

rules made applicable to all persons. The rules require that the chief justice of the appellee, the

state supreme court, actively supervise them, thusly:

> (B) The chief justice shall have the following **administrative powers and
> duties.** The chief justice shall:
> (i) **be the administrative officer of the court and shall be responsible
> for the dispatch of its business;** (emphasis added) Fla. R. Jud. Admin. 2.205 (2)

The rules make certain requirements of the appellee, clerk of court: "Custody of Records,

Files, and Seal. All court records and the seal of the court shall be kept in the office and the

custody of the clerk. The clerk shall not allow any court record to be taken from the clerk's office

or the courtroom, except by a justice of the court or upon the order of the court." Fla. R. Jud.

Admin. 2 205(b)(2)

The rules require the permanent retention of certain records, excluding only the following

14

relating to attorney discipline: "10 years — Cases disposed of by order involving individuals licensed or regulated by the court and noncriminal court records involving the unauthorized practice of law." Fla. R. Jud. Admin. 2.430(c) (3)(B)

All other disciplinary records must be permanently maintained, including: "court records of the supreme court in which the case was disposed of by opinion."Fla. R. Jud. Admin. Fla. R. Jud. Admin. 2.430(d)(2)

Thus, where as in the instant appeal, all of the appellant's cases were disposed of by opinion, there has been a *per se* failure of the active supervision prong of *Midcal.* For that reason, the state action immunity defense of the appellees must fail.

Further, the clearly articulated rules of the *Florida Rules of Judicial Administration,* prohibit the creation of secret files, thusly: "Records of Proceedings. The clerk shall keep such records as the court may from time to time order or direct. The clerk shall keep a docket or equivalent electronic record of all cases that are brought for review to, or that originate in, the court. **Each case shall be numbered** in the order in which the notice, petition, or other initial pleading originating the cause is filed in the court. (emphasis supplied) Fla. R. Jud. Admin. Fla. R. Jud. Admin. 2.205(b)(3) *See, also,* AR 0119.

This Court's docketing rules are nearly identical. *See,* F.R. App. P. 12

Thus, whereas in the instant appeal, the clerk has admitted to a separate filing system, not public, and not numbered, there has been a *per se* failure of the first prong of *Midcal.* Further, where there has been no indication by the clerk of the active supervision of those secret files, there has been a *per se* violation of the second prong of *Midcal.*

The acts of concealment, spoliation and destruction of non-discretionary government records are supervening acts which void the original action, and require a *per se* sanction in order to make a claimant whole. In Florida, in *Tramel, as Sheriff of Columbia County, Florida v. Bass*, 672 So. 2d 78, 84 (Fla. 1st DCA 1996), the answer and affirmative defenses of a sheriff, including an immunity defense, were stricken, and a default judgment entered against the sheriff. On a dashcam video tape, the trial court found, after extensive evidentiary proceedings, that a crucial six seconds of the tape had been erased while the tape was in the care, custody and control of the sheriff. The trial court rejected the immunity defense.

In Florida, in criminal proceedings, Florida Statute 918.13 - "Tampering with or fabricating physical evidence,: provides for a third degree felony for any violation.

The appellee, The Florida Bar, has published two articles, both encouraging harsh sanction for the destruction of records and evidence. *See,* James T. Sparkman and John W. Reis, *Spoliated Evidence: Better than the Real Thing?*, 71 Fl. Bar Jnl. No. 7 ( July/August 1977).[1] and William F. Hamilton, Lindsay M. Saxe, and Stephanie Moncada, *Streamlining and Modernizing Florida's Prelitigation Preservation Standard: Modern Technology Demands a Modern Solution,* 88 Fl. Bar Jnl. No. 5 (May, 2014): "The intentional destruction or alteration of evidence undermines the integrity of the judicial process and, accordingly, may warrant imposition of the most severe sanction of dismissal of a claim or defense, the striking of pleadings, or entry of a default. The destruction of evidence is such a grave offense that counsel and litigants may face additional sanctions including a fine and disbarment." (p. 18)

16

---

[1] Citator guide: Cornell University Law School.

In *DePuy, Inc. v. Eckes,* 427 So. 2d 306 (Fla. 3d DCA 1983), the defendants pleadings were stricken when the defendant failed to return all of a prosthetic hip which had fractured.

In *Rockwell International Corp. v. Menzies,* 561 So. 2d 677 (Fla. 3d DCA 1990), a manufacturer's pleadings were stricken when it failed to return the entire machine, including the bolts, after receiving it from the plaintiff for inspection.

The Federal Courts, equally, reject the notion that anyone is above the law where the issue concerns the supervening act of the destruction of official records. In *United States v. Nixon,* 418 U.S. 683 (1974), the President claimed sovereign immunity in the name of executive privilege, from a the production of the famous 'Watergate' tapes. Once the famous 18.5 minute erasure was made known, Nixon resigned.

In *United States v. H. R. Haldeman et. al.,* 559 F2d 31 (U.S.App.D.C. 1976); *cert. den.,* 97 S.Ct. 2641 (1977), all of the following persons received no immunity, and either pled guilty, or were tried and convicted for, among other things, the destruction of records from the Gemstone project, which was the codename for the Watergate breakin: the Attorney General of the United States: John M. Mitchell, the Assistant Attorney General of the United States: Robert C. Mardian, Special Counsel to the President: Charles W. Colson, Attorney, Kenneth W. Parkinson, Assistant to the President of the United States, Harry R. Haldeman, Assistant to the President of the United States, John D. Erlichman, Staff Assistant to the White House, Gordon Strachan.

In *Nixon v. Administrator of General Services,* 433 U.S. 425 (1977), the Court rejected the argument, that, because all of the defendants were members of the Executive Branch, they

were all immune under sovereign immunity.

Such state action cannot preempt the independent application process of the Federal Courts. To the extent that any such state action affects an application for entry into the national Federal market for the delivery of legal services, it is *per se* subject to Sherman Act review and sanctions.

### 2. THIS COURT HAS REJECTED FLORIDA'S ATTEMPT TO DEFEND ON SHERMAN ACT STATE ACTION IMMUNITY IN CASES WHERE STATE OFFICIALS AND AGENCIES ARE ATTEMPTING TO REMOVE PROFESSIONALS FROM PRACTICING

In *Bolt v. Halifax Hospital Medical Center*, 851 F.2d 1273 (11th Cir. 1988), the District Court entered directed verdicts against a doctor, who had alleged Sherman Act violations in the actions of several hospitals to remove him from staff privileges. This Court followed *Midcal's* two-prong test for state action immunity. *Bolt* is important here, because this Court made key and significant analysis of the role of the appellee, the state supreme court. This Court found an absence of both a clearly articulated policy to which the state supreme court could point, and, more importantly, no showing of any type of active supervision which could have provided the defendants from, essentially, 'offing' Dr. Bolt. Importantly, this Court reprimanded the District judge for failing even to allow Dr. Bolt to put on his entire case in chief before directing the verdicts. This Court reasoned as follows:

> We reach a different conclusion, however, as to the involvement of these defendants in the community-wide conspiracy. We reach that conclusion based on the defendants' patent inability to establish the first prong of the state action exemption test: clearly, Florida has articulated no policy favoring participation by any of the DCH or HHMC defendants in a multi-hospital scheme to rid a medical community of a particular physician. *Bolt, Id.*

18

After *Bolt,* the United States Supreme Court decided *Patrick v. Burget, 4*86 U.S. 94, 108 S. Ct. 1658, 100 L. Ed. 2d 83, 1988 U.S. LEXIS 2071 (1988). As a result of the similarities, this Court, *en banc,* took up the issue of sovereign immunity again in *Bolt.* 874 F.2d 755 (11th Cir. 1989). *Patrick,* too, zeroed in on the 'active supervision' component of the state supreme court.

This Court was equally vociferous in its defense of professionals in Florida in *Mack v. Florida State Board of Dentistry, 430 F.2d 862* (then-5th now 11th Cir. 1970) *cert. den .* 401 U. S. 960, 961 (1971).

In these matters, where this Court, and other courts, are specifically addressing situations where it appears that the only, much less last, court of last resort, is the state supreme court, there is a denial of *Parker* immunity where, as in this appeal, the state supreme court, among others, is in a position to both cause the harm, the concealment and destruction of records, and then, as here, seek to escape Sherman Act liability under the cloak of that immunity.

## B . THE ORDER OF DISMISSAL REVERSES THE ONLY THREE SHERMAN ACT DECISIONS OF THE UNITED STATES SUPREME COURT, WITH RESPECT TO THE LEGAL SECTOR

For a more detailed analysis of this argument, see the appellant's memorandum at AR 0081 - AR 0096

Into the swirl of the incredible Watergate cases described above, and the daily news cycle of fantastical corruption at the highest levels of government, the Court decided *Goldfarb.* Later, the Court decided *Bates* and then, *Hoover.* These cases, all ignored by the District Judge and all of the appellees, constitute the controlling law of this case. An order affirming the dismissal would require this Court to reverse all three of these cases. If all of the language of *Goldfarb* had

to be stripped away, and leaving the one essential power concern with which the Court was so concerned it is this: "The State Bar, by providing that deviation from County Bar minimum fees **may lead to disciplinary action**, has voluntarily joined in what is essentially a private anticompetitive activity, and in that posture cannot claim it is beyond the reach of the Sherman Act. *Parker v. Brown, supra,* at 351-352. Its activities resulted in a rigid price floor from which petitioners, as consumers, could not escape if they wished to borrow money to buy a home." *Id.* at 792 (emphasis supplied)

*Goldfarb/Bates/Hoover,* therefore, are three precise cases from which this Court may take the distinct rules from the Sherman Act, as applied to the legal sector, as a frame of analysis:

a ) *Goldfarb* holds that there is no sovereign immunity where either the 'head' or any 'arm' of a State disciplinary process, makes or adopts a general rule which is violative of the Sherman Act;

b ) *Bates* further restricted the ability of the legal regulatory sector by forbidding the violation of a lawyer's First Amendment right to advertise. Such agencies and their personnel may not, also, violate an applicant's Federal statutory rights. *Ellen S. v. Florida Board of Bar Examiners,* 859 F.Supp. 1489 (S.D. Fla. 1994);

c ) *Hoover,* holds that, first, there must be a clear interstate commerce component, and second, that the challenge must be to the general rules, and not to rules as may have been particularly applied to the individual, thus confirming the maxim that the Sherman Act protects competition and not competitors.

Importantly, these cases make clear that state action immunity cannot be utilized to preempt the important and independent actions of admissions committees in the application process to the national, Federal bar. In this appeal, Appellant's case falls squarely within *Goldfarb,* and especially, where those rules looked strikingly like the kind of 'rules' that, but for this Court's decision, would have doomed Dr. Bolt in *Bolt, supra.*

An Order affirming the Order of Dismissal would require the reversal, therefore, of *Goldfarb/Bates/Hoover.*

## C. THERE IS NO SUCH DEFENSE AS AN '11TH AMENDMENT IMMUNITY' FOR THE NONDISCRETIONARY CONCEALMENT, SPOLIATION AND DESTRUCTION OF GOVERNMENT RECORDS BY THE APPELLEES

For a more detailed analysis of this argument, see the appellant's memorandum at AR 00110 - AR 0117.

An order affirming the dismissal of the complaint on '11th Amendment immunity' grounds would automatically reverse the state action immunity framework for the legal sector in *Goldfarb/Bates/Hoover.* Those cases would be reversed.

The controlling '11th Amendment immunity' case, *Edelman v. Jordan,* 415 U.S. 651 (1974), was decided by the United States Supreme Court in 1974, the year before the Court decided *Goldfarb.* Thus, with *Edelman,* clearly in mind, the Court relegated the 11th Amendment far down on the footnote list in *Goldfarb, supra,* thusly:

> [ Footnote 22 ] The State Bar also contends that it is
> protected by the Eleventh Amendment. See Edelman v. Jordan,
> 415 U.S. 651 (1974).Petitioners dispute this
> contention, and the District Court had no occasion to reach it
> in view of its holding. Given the record before us we intimate no view on
> the issue, leaving it for the District Court on remand. [421 U.S. 773, 794]

21

*Id.*at footnote 22.

The rejection of the 11th Amendment as an affirmative defense by non-legislative branches, here the regulators in the judiciary branch, was meant to serve as a check on even any suggestion of legislative overreach by the judiciary. *Goldfarb* telegraphed to the States that, under no circumstances, would the judiciary be permitted to create legislation, in violation of the separation of powers, as by creating lawyer rules, and then cloaking itself with 11th Amendment immunity. After *Goldfarb,* neither *Bates* nor *Hoover* show any indication that the state legal industry regulators even thought to raise it as an affirmative defense.

This Court has addressed 11th Amendment immunity in the presence of Federal legislation. In *Kimel v. Florida Board of Regents,* 120 S.Ct. 631 (2000), this Court found that many State and Federal statutes have both a public/private purpose and mechanism for relief, typically, either money damages and/or equitable relief, like injunctions, but also statutory relief, like declaratory actions.

The allegations in the appellant's complaint, however, at no place, allege either the violation of any Federal or State statute, which provide for money damages, or any money damages for such.

Florida's antitrust statute specifically provides for legal action against all levels of

22

government, including their personnel: "Person" means any **individual, ... or governmental entity, including the State of Florida, its departments, agencies, political subdivisions, and units of government.** (emphasis supplied) Florida Statute § 542.17 (3) (1980) *See,* for further analysis, AR 0100 - AR 0102

The appellees can point this Court to no allegation in the complaint where the appellant alleges the violation, for money damages, of some Federal statute, or of some state statute, by the legislature, for money damages and a showing of a non-waiver of sovereign immunity. Florida's own antitrust statute is to the contrary. The '11th Amendment Immunity' is not applicable to the facts as alleged in the complaint.

## D. THERE IS NO *ROOKER-FELDMAN* EXCEPTION TO THE *MIDCAL* TEST FOR *PARKER* IMMUNITY

For a more detailed analysis of this argument, see the appellant's memorandum at AR 00109 - AR 0110.

The appellees alleged that, somehow, the jurisdictional doctrine, known generically as the 'Rooker-Feldman' doctrine, allows for state action immunity in this matter.

Ironically, the 'Feldman' component of the doctrine was decided three terms after the United States Supreme Court decided, and originated, the two-part *Midcal* test for *Parker* immunity. *See, District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462 103 S.Ct. 1303 (1983). *Feldman* does not authorize the proscribed nondiscretionary concealment, spoliation and destruction of official state records. Before Feldman, Florida lost on its 'Rooker' argument. *See, Mack v. Florida State Board of Dentistry, 430 F.2d 862* (then-5th now 11th Cir. 1970) *cert. den* . 401 U. S. 960, 961 (1971), leaving only the 'Feldman' prong.

23

By the time that *Feldman* was decided, the Court had already decided *Goldfarb, Bates* and *Midcal.* Presumably, if *Feldman,* had some relevance to *Parker* immunity, the Court would have provided guidance in that regard. *Hoover* came along in the term immediately after *Feldman.* The Court will find this significant, because in *Hoover,* the Court, in fact, extensively reviewed the actions of the state supreme court, just like in *Feldman,* and yet *Feldman* is not mentioned in *Hoover,* either.

Further, *Feldman* does not allow for the preemption of rules of admission of the national, Federal bars of the various Federal courts. In other words, with all of the cases in hand, *Feldman* did not knock out *Bates.* Further, *Feldman* may only be raised as an affirmative defense, and therefore, only within the two-prong test of *Midcal.* There are no state action immunity defenses which are simply 'out there.' This Court decided *May v. Capote and South Florida Water Management District,* 149 Fed.Appx. 913 (11th Cir. 2005), at or about the time, that the United States Supreme Court wrote its most recent 'Rooker-Feldman' decision in *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280 (2005).Under *Midcal,* there must be some clearly articulated government policy for the offending antitrust action. If the policy is nothing more than naked antitrust action, the policy must fail. *Goldfarb.* Or, if the policy offends some other constitutional or statutory right, the policy must fail. *Bates.*

Under the second prong of the *Midcal* test, if the government defendants can get past the 'clear articulation' requirement, those defendants must show that there is an active state supervision of the offending right, so as to protect harm to competition. Where the government body, which has the power to make the offending policy is also the body that allegedly is the

24

protector of the policy, especially where the harm is to professionals, loss of their livelihood, there can be no active supervision. The judge cannot also be the hangman. A supervening act and/or a national Federal rule of admission, or a rule of admission of another State which demonstrates a clear antitrust activity by the originating State bar, simply does not allow for the application of *Feldman. Boyd, supra, Goldfarb, supra, Bates, supra.*

In this matter, the state destroyed the appellant's records. There could be no *Feldman* review because this is what this Court would be asked to review:

———————————————

———————————————

There is simply nothing there anymore.

*Feldman* has been largely ignored by the Courts, but taken up again in *Exxon Mobil.* The Court, in *Exxon*, continued to take a dim view of *Feldman,* saying: " Since Feldman, this Court has never applied Rooker Feldman to dismiss an action for want of jurisdiction. The few decisions that  have mentioned Rooker and Feldman have done so only in passing or to explain why those cases did not dictate dismissal." *Exxon Mobil, supra* at 287

The Court went further, and held:

> In parallel litigation, a federal court may be bound to
> recognize the claim- and issue-preclusive effects of a state-court
> judgment, but federal jurisdiction over an action does not terminate
> automatically on the entry of judgment in the state court.
> Nor does §1257  stop a district court from exercising subject-matter jurisdiction
> simply because a party attempts to litigate in federal court a matter previously
> litigated in state court. If a federal plaintiff present[s] some independent claim,
> albeit one that denies a legal conclusion that a state court has reached in a case

25

> to which he was a party . . . , then there is jurisdiction and state law determines
> whether the defendant prevails under principles of preclusion. *Id.* at 293.

Appellants's appeal follows *Exxon.* There is a supervening action by the State, the concealment, spoliation and destruction of his records. That action impacts his chances before the admissions committees in the national, Federal courts, as well as in other States, where the appellant already had to withdraw one application Such state action simply neither precludes, nor preempts the Federal Sherman Act jurisdiction in this matter.

This Court's subsequent holding in *May, supra,* is not contrary. A property case from Florida, this Court found, based on May's own allegations, that he simply was attempting to have the District Court provide the higher valuation of his property that the state court had rejected, in favor of a lower amount, among other allegations. Under those extremely limited circumstances, this Court formulated its test and denied that review. *May v. Capote, supra,* at 916.

In this appeal by the appellant, however, under Florida law with respect to the destruction of those records, the appellant is the 'winner,' and not the 'loser.' *Feldman* becomes inapposite. *See also, Tramel, supra, DePuy, supra,* and *Rockwell, supra. See also, Continental Insurance Co. v. Herman,* 576 So. 2d 313 (Fla. 3d DCA 1990): victim of the spoliation of evidence need only show the potential for a civil action which could have gone forward, but for the spoliation; *Martino v. Wal-Mart Stores, Inc.,* 908 So.2d 342 (Fla. 2005): sanctions for spoliation of evidence would remain severe.

The 'Rooker-Feldman' doctrine fails the *Midcal* test for state action immunity, and the defense, therefore, fails for the appellees.

## II.

## THE ORDER OF DISMISSAL MUST BE VACATED
## UNDER THIS COURT'S *DE NOVO* REVIEW

The above framework of analysis in place, and given this Court's *de novo* review in any

event, the appellant turns to a review of the Order of Dismissal.

### A . THE LEGAL STANDARD

The correct legal standard for pleading in a Sherman Act case is either 'quick look' or

'rule of reason.' *Actavis, supra.* Most of the language of the order for this section is a copy/paste

from the District Judge's Order in *Harty v. North Lauderdale Supermarket, Inc.,* No.

0:2014cv62945 - Document 24 (S.D. Fla. 2015), which is not a Sherman Act case. Thus, the

cases, cited in the Order, and quoted in *Hardy,* beginning with *Kokkonen v. Guardian Life Ins.,*

511 U.S. 375 (1994), and ending with *GJR Invs., Inc. v. County of Escambia, Fla.,* 132 F.3d

1359, 1369 (11th Cir. 1998), are not Sherman Act cases, and are, therefore, inapposite.

### B . PARKER IMMUNITY: COUNTS I and II

The District Judge chose to completely ignore *Goldfarb/Bates/Hoover. Askew v. DCH

Reg'l Health Care Auth.,* 995 F.2d 1033, 1037 (11th Cir. 1993), is a Sherman Act municipality

case. Importantly, *Goldfarb/Bates/Hoover,* as well as Florida's own antitrust act, makes the

appellees eligible parties to this matter. *Otworth v. The Florida Bar*, 71 F. Supp. 2d 1209, 1220

(M.D. Fla. 1999), as the opinion clearly states, is a *Hoover* case. The appellant's case is a

*Goldfarb* case. *Genins v. State Bar of Ga.*, 2006 WL 2699076, at *5 (S.D. Ga. 2006), is an

example of the District Court attempting to make a new §1983/Sherman Act defense. *Genius,* is

only a §1983 case, and not a Sherman Act case. The immunity defenses of both are not merged,

and *Genius* is, therefore, inapposite. *McFarland v. Folsom*, 854 F. Supp. 862, 878 (M.D. Ala. 1994), relies on *Askew,* but that case goes to the status of the party. *McFarland,* decided fourteen years after *Midcal,* is a wide-ranging 'discrimination' case, where there were multiple challenges to the bar rules, none made in the context of *Goldfarb/Bates/Hoover. McFarland v. Folsom,* 854 F. Supp. 862, 878 (M.D. Ala. 1994), actually states, in several places, that it is a *Bates* and not a *Goldfarb* case. *Caroll v. Gross*, 984 F.2d 392 (11th Cir. 1993), is a §1983 case. *Caroll v. Gross*, 984 F.2d 392 (11th Cir. 1993), is a discrimination case. *Manko v. Steinhardt*, 2012 WL 213715, at *3 (E.D.N.Y. 2012), is not a Sherman Act case.

## C . ROOKER-FELDMAN: COUNTS Counts III and IV

*Dale v. Moore*, 121 F.3d 624, 626 (11th Cir. 1997), was decided before this Court decided *May,* and before the Supreme Court decided *Exxon. Exxon* would reverse *Dale.* Importantly, *Ellen S.,* decided before *Dale,* is contrary. *Dale* is a discrimination case. *Scott v. Frankel*, 562 F. App'x 950, 953 (11th Cir. 2014), is not a Sherman Act case. *Johnson v. Supreme Court of Ill.,* 165 F.3d 1140, 1141 (7th Cir. 1999), is a discrimination case. *Exxon* does not mandate dismissal because of the appellant's claim for relief. The Order argues that the appellant's claim is 'inexplicably intertwined' with his original disbarment. How? There is no longer any such 'disbarment.' That case is over. *Tramel* controls the new cause of action. *Exxon* allows for parallel jurisdiction, essentially reversing *Feldman.* Such a supervening act eliminates Rooker-Feldman from consideration.


## D . IMMUNITY UNDER THE 11TH AMENDMENT: ALL COUNTS

As argued above, there is no '11th Amendment' immunity in the legal sector Sherman Act cases. The court specifically rejected it in *Goldfarb*, and it never came back in *Bates* or *Hoover.* Further, Florida's antitrust statute specifically allows parties such as those in this appeal. *Grizzle v. Kemp, 634 F.3d 1314,(11th Cir. 2011),* is a civil rights case, and inapposite. *Searcy v. Singletary,* 894 F. Supp. 1565 (M.D. Fla. 1995), is a civil rights case, and inapposite. *Carr v. City of Florence*, 916 F.2d 1521, 1524 (11th Cir. 1990) is a civil rights case. *Ex Parte Young*, 209 U.S. 123 (1908), is not applicable here. *Schopler v. Bliss*, 903 F.2d 1373, 1379 (11th Cir. 1990), is contrary to *Goldfarb* and, addition, is not a Sherman Act case. Florida's antitrust statute is fully integrated: "It is the intent of the Legislature to exercise its powers to the fullest extent consistent with the Constitutions of this state and the United States." § 542.31. "It is the intent of the Legislature that, in construing this chapter, due consideration and great weight be given to the interpretations of the federal courts relating to comparable federal antitrust statutes..." § 542.32 This language is consistent with the parallel jurisdiction language of *Exxon.*

*Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89 (1984), is a discrimination case, and simply states that pendent state claims are not subject to review. There are no pendent state claims in this appeal, however, and even if there were, again, Florida's antitrust statute, unlike in *Pennhurst* is fully merged with the Sherman and Clayton antitrust Acts. *Exxon* controls.

*Goldfarb/Bates/Hoover* reject the 'Eleventh Amendment' immunity defense in the legal sector cases.

### E. MISCELLANEOUS ITEMS IN THE ORDER

The Order purports to dismiss the appellee, Hall, from this matter, for defective service.

29

The appellant corrected the service upon Hall, and Hall's counsel agreed to the reinstatement, and, in fact, was defending Hall at the time of the dismissal. *See,* Docket entry 69, AR 0006, Docket entry, 83, AR 0005, and Docket entry, 90, AR 0004. The appellee, The Florida Board of Bar Examiners, entered its appearance and motion to dismiss for improper service, on the day prior to the entry of the Order of Dismissal. *See,* Docket entry 92, AR 0004. To the extent that the appellant will discover from the said appellee the correct person to serve, he will do so, upon this Court's reversal in this matter.

Finally, and contrary to the language of the Order, the appellant's utilization of the term 'injuries and damages' in the summary clause, simply does not rise to an allegation of claim for damages. There is no citation in the complaint to any rule that would allow for damages. In fact, there are no rules of the appellees that allow for damages in any event. The appellant in this matter is appearing *pro se*. Thus, he cannot claim, for example, 'attorneys fees' in his complaint. Given what is, and will be the continued acrimony between the parties in this matter, therefore, the term 'damages' simply refers to any prospective sanctions award.

## VI. CONCLUSION

The Order of Dismissal, with prejudice, should be vacated. The Order Staying Discovery, should be vacated. The Order dismissing the appellee, Hall, should be vacated. The appellee, the Florida Board of Bar Examiners, should make available for service its agent for service of process within fifteen days from the entry of this Order. All discovery shall be produced to the appellant within thirty days from the entry of this Order. The appellant should be awarded costs consistent with this appeal.

30

RESPECTFULLY SUBMITTED,

_____

Anthony Eladio Ramos, pro se
1805 Key Blvd.
Apt. 513
Arlington, VA 22201
202-236-3427
00aramos@gmail.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 4th day of October, 2016 the original and three copies of this Notice were mailed to: Clerk of Court, U.S. Court of Appeals for the 11th Circuit, 56 Forsyth St., N.W., Atlanta, Georgia 30303, and that a copy was emailed to:

Defendants, Barbara J. Pariente, Thomas D. Hall, John R. Tomasino, Office of the Clerk of The Florida Supreme Court, and The Florida Supreme Court, by emailing:
Shane Weaver, Esquire, Office of the Attorney General, 1515 N. Flagler Drive, Suite 900, West Palm Beach, FL 33401, at Shane.Weaver@myfloridalegal.com, and;

Defendants, Kevin Tynan, Richard Liss, John F. Harkness, Jr., and The Florida Bar, by emailing: Michael H. Moody, Esquire, Greenberg Traurig, P.A., 101 East College Ave., Tallahassee, FL 32301 at, moodym@gtlaw.com; and;

Defendant, The Florida Board of Bar Examiners, by emailing James Dean, Esquire, Messer Caparello, P.A., 2618 Centennial Place, Tallahassee, Florida 32308 at jdean@flalaw.com .

_____

Anthony E. Ramos, pro se